UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALQUANDRE H. TURNER, | Case No. 3:17-cv-00151-HDM-CLB |
| Petitioner, | ORDER |
| v. | |
| RENEE BAKER,[1] et al., | |
| Respondents. | |

Alquandre H. Turner's 28 U.S.C. § 2254 habeas corpus petition is before the court for the adjudication of the merits of the remaining claims. (ECF No. 38.) Having considered the claims and the parties' arguments, the petition is denied.

I. **Procedural History and Background**

In April 2006, a jury convicted Turner of first-degree kidnapping with use of a deadly weapon; conspiracy to commit robbery; robbery with use of a deadly weapon; burglary while in possession of a firearm; and sexual assault while in possession of a firearm. (Exhibit 13.)[2] The charges arose from the December 2005 armed robbery of a florist in Las Vegas, Nevada. The state district court sentenced Turner to terms that amount to 20 years to life in prison. (Exh. 14.) Judgment of conviction was entered on

---

[1] According to the state corrections department's inmate locator page, Turner is incarcerated at Lovelock Correctional Center. The department's website reflects Nethanjah Breitenbach is the warden for that facility. At the end of this order, the court directs the clerk to substitute Nethanjah Breitenbach for prior respondent Renee Baker, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The stipulated joint exhibits are found at ECF Nos. 25-27.

June 20, 2006. (Exh. 15.) The Nevada Supreme Court affirmed Turner's convictions in April 2007. (Exh. 29.)

Next, Turner submitted a federal habeas petition challenging the same judgment of conviction. (Case no. 3:08-cv-00435-BES-VPC.) In January 2009, the court dismissed the petition without prejudice due to Turner's failure to respond in any way to this court's order directing him to pay the $5.00 filing fee. (*Id*. at ECF No. 9.) In February 2014, Turner's second habeas petition challenging the same judgment of conviction was dismissed with prejudice as untimely, and judgment was entered. (Case no. 3:13-cv-00096-RCJ-WGC, ECF Nos. 10, 11.)

In October 2014, the state district court entered an amended judgment of conviction, giving Turner 154-days credit for time served. (Exh. 48.) The Nevada Supreme Court affirmed the denial of Turner's state postconviction habeas corpus petition in June 2015. (Exh. 64.) In April 2017, Turner filed this third federal habeas petition. (ECF No. 5.) Ultimately, this court appointed counsel, and Turner filed a counseled, first-amended petition in April 2022.[3] (ECF No. 38.) This court dismissed ground 1 as purely a matter of state law, and therefore, noncognizable in federal habeas corpus. Respondents have now answered the remaining claims, and Turner replied. (ECF Nos. 54, 61.)

II.     **Legal Standards & Analysis**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

---

[3] This court had dismissed the third federal petition earlier as second and successive. Turner appealed, and the Ninth Circuit Court of Appeals held that the amended judgment of conviction awarding Turner credit for time served was a new judgment of conviction. Thus, the court of appeals deemed the current federal petition a first petition and remanded it to this court. *Turner v. Baker*, 912 F.3d 1236,1241 (9th Cir. 2019).

2

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of § 2254(d), "if the state court identifies

3

the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

4

### III. Trial Testimony[4]

The State subpoenaed Jakarr Dudley, Turner's 15-year-old neighbor. (Exh. 10 at 28-49.) On the day of the robbery, Dudley was hanging out with Turner and Turner's friend A.K., who is Asian. They drove to a shopping center in A.K.'s Honda Civic; Turner and A.K. got out. Dudley stayed in the car and didn't see where they went. They returned a few minutes later and the three drove away. Then A.K. said, "Fuck it, let's do it." (*Id*. at 35.) A.K. asked Dudley to hand them handcuffs and duct tape that were in the trunk. At some point A.K. had taken a gun out of his waistband. Dudley never saw Turner with the gun. They let Dudley out of the car and went back and parked where they had first stopped. Dudley walked across the street to McDonald's; he saw the Honda in the alley behind the shopping center. A.K. and Turner ran out of the back of the store. He told them to wait because he needed a ride. He got back in the car and saw flowers, a purse, and a cellphone. They gave Dudley the phone. He made numerous calls, including to his father, until the phone was shut off two days later. On cross examination, Dudley did not recall any conversation when they first got in the car about going to move some furniture to make some money.

Mikyung Kim testified that she and her husband owned the florist. (Exh. 10 at 50-102.) On December 17, 2005, a very short Asian man and an average-height African American man came into the shop about 3:30 in the afternoon. They asked her about the price for a bouquet of roses. They said they were too expensive and left. They returned about 10 minutes later and said they wanted to buy the flowers. The Asian man went toward the back of the store; Kim went to the cash register. The Asian man returned brandishing a gun. The black man came up to her and put one hand in

---

[4] The court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. The court summarizes the same solely as background to the issues presented in this case, and it does not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by this court. Any absence of mention of a specific piece of evidence or category of evidence does not signify the court overlooked it in considering Turner's claims.

handcuffs; he told her to open the cash register. She complied and then he pushed her down to her knees and taped her face and feet. He unbuttoned her pants, put his hand inside her pants and penetrated her vagina digitally. He never apologized to her or told her he was scared. They took flowers out of the case, the money from the cash register, and her purse.

Las Vegas Metropolitan Police Department ("LVMPD") Officer Dana DiPalma testified that she responded to a daytime robbery call at the florist. (Exh. 10 at 17-27.) She and other officers found the victim handcuffed, with tape over her mouth and around her feet. Her pants were unbuttoned, and her undergarment showed. LVMPD Detective Eric Stout testified that Kim later identified Turner and A.K. from separate photo lineups. (Exh. 11 at 3-27.) LVMPD Detective Scott Kavon testified that Turner was home when Kavon and other officers executed a search warrant where a credit card in the name of the florist shop was found outside near the door of the residence. (Exh. 10 at 130-137.)

Alquandre Turner testified that at the time of the incident he was unemployed and looking for work. (Exh. 11 at 28-99.) A.K., whom he didn't know well, called him and asked him if he wanted to make some money. Dudley happened to come out of his next-door residence and ended up getting in A.K.'s Honda Civic with Turner and A.K. They got on the freeway and Turner asked repeatedly where they were going. They pulled into a shopping area with stores and restaurants. Turner thought A.K. wanted to get something to eat at the Lao restaurant there. Instead A.K. pulled out a gun, pointed it at Turner, and said, "okay, cuz, this is what we're going to do." (*Id*. at 40.) Turner was shocked. One back seat was down, and you could reach into the trunk from the back seat. A.K. told Dudley to turn around and retrieve some tape and handcuffs. Dudley reluctantly complied; he tried to hand them to Turner. When Turner wouldn't take them, he threw them on the floor between Turner's legs. Turner said, "I'm not doing nothin'." A.K. told him, "You either do this or I'm going to do you." (*Id*. at 41.) Turner understood

6

A.K. to mean that he would shoot Turner if Turner didn't do as he was told. A.K. told Dudley to remain in the car. They first entered a Sprint cellular store, but once inside they could see that the store was only separated by glass from other stores inside the building once you entered from the outside. They left. A.K. had the gun in his pocket and was pointing it at Turner. A.K. spotted the florist; he made Turner go in first, then he followed. A.K. was looking to see if there were surveillance cameras. Kim asked them if they wanted to buy flowers. A.K. asked about prices. He said it was too expensive, and they left.

     A.K. drove around to the back of the shopping center. He showed Dudley the back door of the florist and told him he had to park the car there so it would be there when A.K. and Turner exited the store via the back. He drove back around to the front. A.K. and Turner got out, Dudley drove away. They returned to the store; A.K. went toward the back while Kim was asking Turner if he wanted to buy the flowers after all. Turner turned around and started to head toward the front door to run out. A.K. reappeared, brandishing the gun. He was pointing it in the direction of Kim and Turner. A.K. told Kim to get down; she got down on her knees. Turner leaned over her and said, "ma'am, please do not be scared, I'm scared too." (*Id*. at 52.) A.K. then told Kim to open the register. She fumbled, then got the register opened; A.K. grabbed the cash. Kim moved toward a corner and dropped to her knees. A.K. directed Turner to handcuff Kim. The three went toward the back of the store to get Kim's purse. A.K. took her wallet, phone, and keys. He told Turner to tape her ankles, so Turner taped her ankles loosely. A.K. made Turner tape Kim's mouth too. They ducked out the back door and ran to the car, which Dudley had parked there. Turner testified that he never touched Kim in a sexual manner at all. The only time he touched her is when he gently put a hand on her shoulder when he told her not to be scared. A.K. gave Dudley Kim's cell phone; he offered some of the stolen money to Turner, but he refused to take it.

Turner was asked about the voluntary statement he gave to Detective Stout. The statement reflected that he had initially told Stout that he was not the African American man who went into the florist, but at trial Turner maintained that he never denied going into the florist. The statement showed that Turner had told the detective that when A.K. pulled up to his house and Turner got in the car, A.K. pulled out the gun. At trial Turner insisted that he never saw the gun until they arrived at the shopping center. The statement indicated that Turner had said it was a black, semiautomatic gun. At trial Turner denied saying this because he said he knew nothing about guns and wouldn't have been able to say whether it was a semiautomatic. The statement reflected that Turner told Stout that A.K. forced him to participate, that he wanted no part of it, but his life was being threatened. Stout had also testified that Turner told him during the interview that he had not wanted to participate in the armed robbery with A.K. and that he told Kim during the incident that he was scared too and that they would get through it together. (Exh. 11 at 3-27.) Turner acknowledged that he never contacted police after the incident. LVMPD crime scene investigator Jerry Autrey testified that no latent fingerprints that matched Turner were found and that no DNA matching Turner was recovered from the tape. Exh. 10 at 102-111.

IV.	**Instant Petition**

**Sufficiency of the Evidence Claims**

**Ground 2**

Turner asserts that the State presented insufficient evidence to establish the use of a gun. (ECF No. 38 at 33-36.) "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at

8

324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id*. at 326; *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The Nevada Supreme Court rejected this claim:

> Appellant Alquandre Turner first contends that the sentencing enhancements for possession of a gun should not have been imposed. In particular, Turner argues that the State failed to prove that an actual gun was used in the commission of the crimes, and that even if the State proved the use of a gun, the State failed to prove that Turner was in possession of the gun. As to Turner's first argument, our review of the record on appeal reveals sufficient evidence to establish the use of a gun beyond a reasonable doubt as determined by a rational trier of fact.[FN1] In particular, we note that the victim testified that Turner's accomplice had a gun. Turner himself testified that his accomplice had a gun and Turner was afraid his accomplice would shoot him if he did not participate in the robbery.
>
> The jury could reasonably infer from the evidence presented that the weapon used in the robbery was an actual firearm and not a toy gun. The jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.[FN2]
>
> Turning next to Turner's second argument, the evidence adduced at trial showed that while the accomplice held the gun, Turner handcuffed the victim, ordered her to open the cash register, taped her nose, mouth, and ankles, and pushed her to the floor. "When one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties ... the unarmed offender benefits from the use of the other robber's weapon, adopting derivatively its lethal potential."[FN3] We conclude that in this case, there was sufficient evidence that Turner was in constructive possession of the gun, and the enhancements for possession of a firearm were properly applied.
>
> [FN1: *See Wilkins v. State*, 96 Nev. 367, 609 P.2d 309 (1980); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).]

> [FN2: *See Bolden v. State*, 97 Nev. 71, 624 P.2d 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).]
>
> [FN3: *Anderson v. State*, 95 Nev. 625, 630, 600 P.2d 241, 244 (1979).]

(Exh. 29 at 2-3.)

Dudley said that A.K. had a gun. Kim testified that A.K. had a gun during the robbery. Turner himself testified that A.K. had a gun during the robbery and that he complied with A.K.'s commands out of fear of being shot. Turner did testify that he didn't know anything about guns, but there is no suggestion in the record that it was a toy gun or anything other than an actual firearm. Turner has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 2 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Habeas relief on ground 2 is, therefore, denied.

**Grounds 4 and 6**

Turner contends in ground 4 that insufficient evidence supported his conviction of conspiracy to commit robbery. (ECF No. 38 at 38-42.) He also argues in ground 6 that insufficient evidence supported the sexual assault conviction. (*Id*. at 44-45.)

The Nevada Supreme Court considered and rejected these two claims together:

> Turner also contends that the evidence presented at trial was insufficient to support the jury's finding of guilt regarding the charges of conspiracy and sexual assault. Our review of the record on appeal, however, reveals sufficient evidence as to those charges to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.[FN9]
>
> In particular, we note that the victim testified that Turner actively participated in the robbery without any instruction or guidance from his accomplice. Although Turner testified that he was forced to participate in the robbery by the accomplice, Turner did not subsequently report the crimes to police, and the victim's credit card was found at Turner's residence. Further, the victim testified that during the robbery, Turner placed his hand down the front of her pants and digitally penetrated her vagina.

10

> The jury could reasonably infer from the evidence presented that Turner conspired to commit the robbery and sexually assaulted the victim. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.[FN10]
>
> [FN9: *See Wilkins*, 96 Nev. 367, 609 P.2d 309; *see also Origel-Candido*, 114 Nev. at 381, 956 P.2d at 1380.]
>
> [FN10: *See Bolden*, 97 Nev. 71, 624 P.2d 20; *see also McNair*, 108 Nev. at 56, 825 P.2d at 573.]

(Exh. 29 at 5.)

Turner testified that A.K. forced him to participate in the robbery. He also testified that he never touched the victim in a sexual manner. But the victim testified that Turner freely participated in the robbery and testified in detail as to how he sexually assaulted her. Turner's recorded statement to police was at times inconsistent with his trial testimony. Even within the statement, the detective asked him about changes in Turner's version of events as the interview unfolded. Turner never contacted police and Kim's credit card was found in his yard. The jury weighed the conflicting testimony. Substantial evidence supports the verdict. Turner has not shown that the Nevada Supreme Court's decision on federal grounds 4 and 6 were contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Thus, the court denies habeas relief on grounds 4 and 6.

**Deadly Weapon Enhancements**

**Ground 3**

Turner asserts that his sentences for the deadly weapon enhancements violated his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 38 at 37-38.) Nev. Rev. Stat. § 193.165 provides for additional penalties where a crime is committed while in possession or constructive possession of or with use of a deadly

11

weapon. Turner received consecutive equal sentences on the kidnapping, robbery, and sexual assault charges under § 193.165(1).

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. VIII. "The concept of proportionality is central" to sentence reviews under the Eighth Amendment. *Graham v. Fl.*, 560 U.S. 48, 59 (2011). Thus, the Eighth Amendment bars not only "barbaric punishments" but also any "extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. Cal.*, 538 U.S. 11, 23 (2003) (plurality opinion) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment). While Eighth Amendment jurisprudence is murky, "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (finding that the "precise contours of [a gross disproportionality principle] are unclear and only applicable in the 'exceedingly rare' and 'extreme' cases") (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J.)); *see Norris v. Morgan*, 622 F.3d 1276, 1286 (9th Cir. 2010) (surveying the "disarray" of Supreme Court jurisprudence on the disproportionality principle that culminated in *Andrade*).

"A court's proportionality analysis under the Eighth Amendment should be guided by objective criteria." *Solem v. Helm*, 463 U.S. 277, 292 (1983). The "approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime" requires "comparing the gravity of the offense and the severity of the sentence." *Graham*, 560 U.S. at 60. If this comparison "leads to an inference of gross disproportionality," the court is then permitted to "compare sentences imposed on other criminals in the same jurisdiction" as well as "the sentences imposed for commission of the same crime in other jurisdictions," but it is not required to do so. *Harmelin*, 501 U.S. at 1004-05 (Kennedy, J.). Reviewing courts should grant substantial

deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. *Solem*, 463 U.S. at 290 (citations and internal quotations omitted). *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Nevada Supreme Court held that the enhancements here did not violate the Eighth Amendment:

> The Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only an extreme sentence that is grossly disproportionate to the crime.[FN4] Regardless of its severity, a sentence that is within the statutory limits is not "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'"[FN5]
>
> This court has consistently afforded the district court wide discretion in its sentencing decision.[FN6] This court will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence."[FN7]
>
> In the instant case, appellant does not allege that the district court relied on impalpable or highly suspect evidence or that the relevant statutes are unconstitutional. Further, we note that the sentence imposed was within the parameters provided by the relevant statutes.[FN8] Accordingly, we conclude that the sentence imposed does not constitute cruel and unusual punishment.
>
> [FN4: *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion).]
>
> [FN5: *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); *see also Glegola v. State*, 110 Nev. 344, 348, 871 P.2d 950, 953 (1994).]
>
> [FN6: *See Houk v. State*, 103 Nev. 659, 747 P.2d 1376 (1987).]
> [FN7: *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).]
>
> [FN8: *See* NRS 193.165; NRS 200.380; NRS 200.366; NRS 205.060 (4).]

(Exh. 29 at 3-4.)

Respondents argue that Turner's sentences are all within the statutory parameters of Nevada law. (ECF No. 54 at 17, citing Nev. Rev. Stat. §§ 193.165, 200.320, 200.380, 200.366.) Turner essentially argues that the deadly weapon enhancements are unduly harsh. He points out that Dudley, the victim, and Turner all testified that Turner did not have the gun. But Turner fails to show the applicable statutes are unconstitutional or that the trial court abused its discretion in sentencing him. Further, he fails to show that the deadly weapon enhancements are grossly disproportionate to the crimes. The evidence adduced at trial was that Turner handcuffed the florist, taped her mouth shut, robbed her and her store and sexually assaulted her. A.K. brandished a gun throughout the robbery. A harsh sentence, without more, does not violate the Eighth Amendment. The Nevada Supreme Court's decision on the deadly weapon enhancements was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The court, accordingly, denies habeas relief on ground 3.

**911 Audio Recording**

**Ground 5**

Turner argues that the State violated his due process rights by failing to produce discovery in a timely manner. (ECF No. 38 at 42-44.) He asserts that the State failed to provide him with the audio recording of the 911 call and only gave him the transcript the week prior to trial.

Turner is apparently claiming that the State withheld favorable evidence. The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, whether or not the prosecution acted in bad faith. *Brady v. Maryland* 373 U.S. 83, 87 (1963). In

*Strickler v. Greene*, the Court set out the three elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281–282 (1999).

Kim testified at trial that she had listened to her call to 911 with prosecutors the week before the trial, and it accurately depicted what she told the dispatcher. (Exh. 10 at 66-77.) The State moved to admit the recording; the defense objected because the State had never provided the recording to the defense. The defense only received the transcript of Turner's statement to the police the week before the trial. The court admitted the recording over objection.

The Nevada Supreme Court pointed out that Turner conceded on direct appeal that the tape was not prejudicial:

> Finally, Turner contends that the district court erred by admitting the recording of the 911 call made by the victim after the robbery. Turner argues that his due process rights were violated because he was never actually provided with a copy of the tape, and although he received a transcript of the tape, the State did not provide the transcript until a week before trial.
>
> In his opening brief, Turner concedes that the tape was not prejudicial, and even informs this court that "the point here is not to seriously suggest this case should be overturned based on admission of the 9-1-1 tape which if anything was helpful to Turner." Under these circumstances, this court declines to review the discovery policies of the Clark County District Attorney. Where Turner concedes that he has suffered no prejudice, such a review would amount to an advisory opinion.[FN11] Turner's argument that his due process rights were violated is without merit.
>
> [FN11: *See Applebaum v. Applebaum*, 97 Nev. 11, 12, 621 P.2d 1110, 1110 (1981) (holding that this court will not render advisory opinions on abstract questions); *see also* Nev. Const. art. 6, § 4.]

(Exh. 29 at 5-6.)

Turner argues here that because he did not receive the recording before trial "he could not have prepared properly for trial." (ECF No. 38 at 42.) This bare assertion fails to demonstrate that Turner was prejudiced. The court notes that on cross-examination

15

of Kim, Kim acknowledged that she did not tell the 911 operator that she had been sexually assaulted. (Exh. 26 at 92-93.) In fact, Turner acknowledged on direct appeal that the tape "was not particularly prejudicial," and conceded that the recording if anything was helpful to his defense. (Exh. 26 at 24-25.)

Turner simply has not shown that the Nevada Supreme Court's decision regarding the allegedly late production of the 911 recording was contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Habeas relief is denied as to ground 5.

The petition, therefore, is denied in its entirety.

**V**. **Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Turner's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Turner claims.

### VI. Conclusion

IT IS THEREFORE ORDERED that the **petition (ECF No. 38) is DENIED**.

IT IS FURTHER ORDERED that a certificate of appealability will not issue.

The Clerk of the Court is directed to:

- substitute Nethanjah Breitenbach for Respondent Renee Baker
- enter judgment accordingly and close this case.

DATED: 26 August 2024.

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE